UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KATHLEEN NEW,

       Plaintiff,

v.                             CASE     NO.     1:07-CV-162-SPM/AK

SADIE   DARNELL,   in   her   official
capacity as Sheriff of Alachua County,
Florida,

       Defendant.

_____/

## STATEMENT OF UNDISPUTED FACTS

1. In 2005 the Plaintiff held the rank of sergeant and was assigned to road patrol supervisory duties. She applied for promotion to the rank of lieutenant. (Pl's dep. pp. 34-35).

2. Pursuant to the promotional process of the Alachua County Sheriff's Office (ACSO) applicants were ranked based upon scoring through written and verbal examinations conducted by an independent board. Sgt. Michael Hanson was the top-ranked applicant, the Plaintiff was second on the list, and Sgt. Michael Jones was ranked third. (Pl's dep. pp. 35-38, Exh. 3; Oelrich Aff.). Of the applicants who applied for promotion, only Hanson, the Plaintiff and Jones were eligible for promotion. (Gainey Aff.; Tudeen Aff.)

3. Hanson was promoted to lieutenant on October 2, 2005. The Plaintiff and Jones were subsequently promoted effective November 13, 2005. Hanson was promoted to the only vacant shift lieutenant position and Jones, who had been serving as a sergeant in

the Professional Standards (Internal Affairs) Bureau, remained in Professional Standards as a lieutenant. (Gainey Aff.; Oelrich Aff.)

4.  When the Plaintiff was promoted to lieutenant, she was assigned duties of a floating position to cover absences of shift supervisors and serve as an extra supervisor until a shift lieutenant's position became available. (Pl's dep. pp. 43-49; Exh. 5; Oelrich Aff.; Gainey Aff.)  When she held the rank of sergeant New had previously supervised a shift on those occasions when the shift lieutenant was absent. (Pl's dep. pp. 38-41; Donnie Love dep. pp. 54-55).  As a newly promoted lieutenant, Plaintiff was on probation for a period of 1 year. (Tudeen Aff.)

5.  On the same date that the Plaintiff and Jones were promoted, November 13, 2005, Keith Faulk, a sergeant assigned to the Public Information Bureau, was assigned the position of acting lieutenant upon the promotion of Lt. James Troiano to captain. Troiano had previously served as the public information officer (PIO).  Faulk's assignment was temporary in nature; unlike New, he was not promoted to the rank of lieutenant. (Pl's dep. pp. 49-51; Oelrich Aff.)  Also, in contrast to the Plaintiff, Faulk had previous experience in the Public Information Bureau. *Id.* at pp. 52-53.

6.  Following her promotion to lieutenant, the Plaintiff supervised the shift of Lt. David Clark, who was absent from his duties for approximately five weeks. (Pl's dep. pp. 74-80; Clark Aff.)

7.  Upon Clark's return to his lieutenant's duties on December 21, 2005, he informed Capt. Donnie Love, the Patrol Division Commander, of New's apparent falsification of patrol deputies' statistics, as well as additional complaints that had been raised by other lieutenants and sergeants regarding New's performance during his absence.

These complaints included the Plaintiff neglecting her duties while accessing eBay on ACSO computers, Plaintiff's failure to assist other supervisors, her tardiness to shift briefings, and her failure to communicate with other shift supervisors. (Clark Aff.). Love requested that the supervisors who worked with New document their concerns. (*Id.*; Donnie Love Aff.).

8. Love received memoranda from Sgt. Kelvin Jenkins, Sgt. John Richman, Lt. Bella Blizzard, Sgt. Fred Thomas, Lt. Mike Hanson, and Sgt. J. J. Moran. Each of these supervisors expressed their dissatisfaction with New's performance as a lieutenant, including her failure to communicate with them or assist in supervisory duties, her neglect of duties while on eBay, and her poor work attitude. Sgt. Jenkins specifically described the incident in which the Plaintiff provided a summary of patrol statistics to be forwarded which was inaccurate and which the Plaintiff had described as "fiction". (Donnie Love Aff., Jenkins Aff., Richman Aff., Blizzard Aff., Thomas Aff., Hanson Aff., Moran Aff.)

9. Love was particularly concerned with the Plaintiff's apparent falsification of the statistics. When he spoke with the Plaintiff about the summary that she had provided Jenkins to submit, the Plaintiff admitted that she had averaged or estimated them rather than providing accurate numbers based upon the deputies' individual weekly statistical sheets. (Donnie Love dep. pp. 51-54).

10. Love initially conducted an investigation to determine whether or not the Plaintiff had violated policy as a result of the complaint that had been asserted. He requested Lt. Clark to review computer-aided dispatch (CAD) and PsNet reports to determine whether any information that the Plaintiff could have gleaned from these reports

would be as accurate as the weekly statistics submitted in writing by the deputies. Love was unaware of any supervisors who had "estimated" statistics rather than summarizing the weekly sheets submitted by the deputies. (Donnie Love Aff.) He also requested that network administrator Mickey Smith examine the computers that the Plaintiff may have used to determine if she had accessed the eBay website. (Donnie Love Aff.)

11. Clark reported that there were discrepancies between the statistics revealed by accessing information from the computers rather than the weekly statistics submitted by the deputies. (Clark Aff.) Smith reported extensive eBay use by New on the agency computers. (Donnie Love Aff.)

12. Love then requested Professional Standards to conduct a formal investigation. Inspector Karen Love was assigned to conduct the investigation.[1] Inspector Love interviewed the supervisors who had provided memoranda to Capt. Love, as well as Micky Smith and the Plaintiff. (Karen Love dep. Exh. 48).

13. Upon completing the investigation, Inspector Love found policy violations of performance of duty and truthfulness. In sustaining a violation of the policy relating to performance of duty,[2] Love found that the Plaintiff was inattentive to her duties, failed to communicate with supervisors on duty, failed to assist with the supervisory workload, neglected her duties while accessing eBay, and had a poor work ethic and lackadaisical attitude. (Karen Love dep. pp. 13-18, 20-26; Exh. 48).

---

[1]  Love is also the wife of Capt. Donnie Love, who played no role in the decision to assign her to conduct the investigation. (Karen Love dep. pp. 5-9). Karen Love perceived no conflict in her investigation because Capt. Love was essentially a conduit for the complaints by the Plaintiff's co-workers. (*Id.*)

[2]   This policy provides "All employees shall perform duties as required or directed by law, ACSO rules, policies and procedures, or other lawful orders of a superior.  While on duty, employees will remain attentive to their responsibilities, and shall not shirk their duties and responsibilities." (Karen Love dep. Exh. 48).

14. Love also sustained the policy violation relating to untruthfulness.[3]  In support of this sustained violation, Inspector Love cited specific summaries submitted or attempted to be submitted by New as a sergeant[4] or patrol lieutenant.  (K. Love dep. pp. 13-18, 20-26; Exh. 48).

15. Sheriff Oelrich initially intended to terminate New for her conduct, particularly with respect to the violation of the truthfulness policy.  However, he reconsidered and demoted her to the position of deputy, where she was assigned to the Court Security Bureau, and placed on disciplinary probation.  (Oelrich Aff.; Pl's dep. pp. 126-27, Exhs. 17 and 18).  The Plaintiff was on probation at the time of her demotion.[5]

16. The Plaintiff appealed her demotion to a Career Service Appeals Board, pursuant to Alachua County Ordinance Section 271.31.  The Board consisted of two members selected by the Sheriff, two members selected by the Plaintiff, and the chairman selected by the four members with concurrence of the Plaintiff and the Sheriff.  The Board was required to hear the appeal no later than 15 days after receipt of the appeal by the Sheriff.  Alachua County Ordinance Section 271.31(3)(b).  (Grimm Aff.; Tudeen dep. pp. 27-34).

17. The chairman was not selected until March 15, 2006.  To comply with the time frame established by the ordinance, the hearing was scheduled for the following day, March

---

[3]  The ACSO policy relating to truthfulness provides "Employees are required to be truthful at all times while acting in an official capacity, whether under oath or not . . . Employees shall not falsify any facts or circumstances on any report, record or document." (*Id.*)

[4]  Prior to her promotion to lieutenant, New submitted a supervisor's summary report for September 2-10, 2005. Her September 11, 2005 interoffice correspondence to Capt. Love, as well as her summary report contained blatant misrepresentations of shift activity particularly with regard to traffic stops by deputies.  Although Plaintiff may claim that she referred to "other resources", her memo to Clark clearly refers only to the deputies' statistics as reflected in their sheets which she summarized by advising Clark "*As you can see,* my shift excelled this week . . ." (Emphasis added. See Pl's dep. pp. 98-104; Exh. 14).

[5]  As a probationary lieutenant the Plaintiff was demoted to sergeant without right of appeal.  She was permitted to appeal the contemporaneous demotion from sergeant to deputy.  (Tudeen Aff.).

16.   Consistent with his practice at the time, Sheriff Oelrich declined to extend a continuance of the hearing requested by the Plaintiff.  The Plaintiff did not attend the hearing.  (Tudeen Dep. pp. 4-5, 14-16, 21-34; Grimm Aff.).  The majority of the Board sustained the demotion.  (Grimm Aff.)

18.   Following her demotion, the Plaintiff was assigned to the Alachua County (Civil) Courthouse to perform her duties as a bailiff.  Her evaluation for the rating period of February 23, 2006 through June 30, 2006 reflected that she met standards.  However, New was counseled for bringing a book into a courtroom.  (Pl's dep. pp. 148-151; Exh. 23).

19. In May 2006, Plaintiff was reassigned to the criminal courthouse.  (Pl's dep. pp. 151-153).  While assigned to this courthouse, she was counseled on several occasions for performance issues, including inattention to security.  (Pl's dep. pp. 155-167; Exhs. 24 and 25; DeCoursey Aff.)

20. On January 26, 2007, the Plaintiff was assigned as a bailiff during a hearing on a motion to suppress evidence.  During the hearing, the Plaintiff conversed with the court clerk regarding the veracity of the Gainesville police officers who were testifying, challenging their integrity.  As Assistant State Attorney Richard Chang conducted direct examination of the officers, New repeatedly walked over to the defense counsel, Christopher Chestnut, to speak with him.  Chestnut was seated with his client, the defendant in the case.  On eight separate occasions during direct examination and closing statement, the Plaintiff interacted with the defense counsel. Finally, on the last occasion, Chang objected to the court, who instructed the Plaintiff

to refrain from any further contact with Chestnut and his client.  (Pl's dep. pp. 169-176; Chang Aff.; Chang dep. pp. 4-7, 10-16).

21.     Following the conclusion of the hearing, Chang complained to the Plaintiff's supervisor, Sgt. Calvin DeCoursey, regarding New's conduct in the courtroom. DeCoursey requested Chang to provide his complaint in writing, which Chang submitted on January 29, 2007.  (Chang Aff.; DeCoursey Aff.)

22. As a result of Chang's complaint, DeCoursey initiated an investigation.  He reviewed a videotape of the hearing and was alarmed at not only the unprofessional conduct displayed by New in the hearing but also her gross breach of court security by presenting her gun side to the criminal defendant when speaking with Chestnut.  He concluded his investigation finding violations of agency policy relating to conduct unbecoming an employee and performance of duty.  Due to the egregiousness of her conduct, he recommended termination.  (DeCoursey Aff.; Pl's dep. pp. 169-170; Exh. 26).

23. The investigation was reviewed by other supervisors in Plaintiff's chain of command, who similarly recommended termination.   According to the ACSO disciplinary process, points are assessed for violations which serve as a guideline for disciplinary action.  Pursuant to the ACSO disciplinary matrix, a sustained violation of conduct unbecoming a deputy sheriff results in the assessment of 50 points, which may result in termination of employment. (Donnie Love Dep. pp. 57-64, Exh. 43).  DeCoursey's investigation, which sustained policy violations for performance and conduct unbecoming a deputy sheriff, reflected 50 points for conduct unbecoming a deputy

sheriff, 30 points for her substandard performance of her duties, and 40 carryover points resulting from her previous demotion. (DeCoursey Aff.; Pl's dep. Exh. 26).

24. Sheriff Darnell met with New at a predisciplinary conference to afford her the opportunity to respond to the investigation. New offered no satisfactory explanation for her conduct.[6]

25. Sheriff Darnell, based upon the egregiousness of the conduct, and the disciplinary points assessed for the sustained violations, as well as the carryover points from the previous demotion, concurred with the recommendation of her supervisors and terminated her employment. (Darnell Aff.; Pl's dep. pp. 180-185; Pl's dep. Exhs. 28, 29). Because the Plaintiff was on disciplinary probation, she could not appeal her termination to a career service appeals board. (Tudeen Aff.)

Respectfully submitted on this 18th day of July 2008.

/s/ R. W. Evans
R. W. Evans
Florida Bar No. 0198862
revans@anblaw.com
ALLEN, NORTON & BLUE, P.A.
906 North Monroe Street
Tallahassee, Florida 32303
Tel: (850) 561-3503
Fax: (850) 561-0332

---

[6] When Sheriff Darnell asked "[W]hy did you do it," Plaintiff replied that she didn't know. (Pl's dep. p. 184).

47948-1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 18, 2008, I electronically filed this document by using the CM/ECF system, which will send a notice of electronic filing to Marie A. Mattox, Esq., Marie A. Mattox, P.A., 310 East Bradford Road, Tallahassee, Florida 32303.


/s/ R. W. Evans
R. W. EVANS

47948-1