# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

KATHLEEN NEW,                                    CASE NO. 1:07cv162-SPM/AK

      **Plaintiff,**

vs.

**SADIE DARNELL, in her official capacity
as Sheriff of Alachua County, Florida,**

      **Defendant.**

_____/

## PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

      Plaintiff, KATHLEEN NEW,  through her counsel and pursuant to Rule 56, Fed.R.Civ.P.,

responds to Defendant's Motion for Summary Judgment as follows:

## I. STANDARD FOR SUMMARY JUDGMENT

      Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper if "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law.  As the Eleventh Circuit has explained:

> In assessing whether the movant has met this burden, the courts should view the evidence
> and all factual inferences therefrom in the light most favorable to the party opposing the
> motion. All reasonable doubts about the facts should be resolved in favor of the non-
> movant.  If the record presents factual issues, the court must not decide them; it must
> deny the motion and proceed to trial.  Summary judgment may be inappropriate even

where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts.  If reasonable minds might differ on the inferences arising from the undisputed facts, then the court should deny summary judgment.

Burton v. City of Belle Glade, 178 F. 3d 1175, 1187 (11th Cir. 1999), *quoting* Clemons v. Dougherty County, 684 F. 2d 1365, 1368-69 (11th Cir. 1982) (citations omitted).

In order to withstand a summary judgment motion, the non-moving party must establish that based on the evidence in the record there can be more than one reasonable conclusion as to the proper verdict.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).   At this stage, the court does not "weight the evidence and determine the truth of the mater," but only determines whether there is more than "some metaphysical doubt" about whether there is a genuine issue for trial.  Id. at 249-50; Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986).

Plaintiff has brought claims of gender discrimination and retaliation. She is proceeding forward on both claims.  As shown below, she has demonstrated that there are disputed issues of material fact which may only be resolved by a jury

## II.  PLAINTIFF WAS THE VICTIM OF DISPARATE TREATMENT ON THE BASIS OF HER GENDER WITH RESPECT TO HER PROMOTION

New must first create an inference of discrimination through her prima facie case. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the plaintiff has made out the elements of the prima facie case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action. Texas Dept. of

2

Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer meets this burden, the inference of discrimination drops out of the case entirely, and the plaintiff has the opportunity to show by a preponderance of the evidence that the proffered reasons were pretextual. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Where the plaintiff succeeds in discrediting the employer's proffered reasons, the trier of fact may conclude that the employer intentionally discriminated. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

        In this case, New claims that she was promoted in title only. Although she received the promotion to lieutenant, she never received the benefits of that position that similarly situated males received, one of whom was not even qualified for the position in the first place, Keith Faulk. In order to establish a *prima facie* case of disparate treatment based on gender with respect to her claims, New uses the prima facie elements for a promotion claim because those best fit her circumstances.[1] Those elements require that she show that (i) she belonged to a protected class; (ii) she was qualified for and applied for a position that the employer was seeking

---

[1]    Other configurations of the prima facie elements apply as well and New easily meets those elements too. For example, in a non-promotional context, in order to establish a *prima facie* case of disparate treatment based on gender, a plaintiff must show (1) that she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees who are not members of the protected class more favorably. Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 842-43 (11th Cir.2000). These elements can just as easily be used in this case.

to fill; (iii) despite her qualifications, she was rejected; and (iv) the position was filled with an individual outside the protected class.  McDonnell Douglas, 411 U.S. at 802.  In the present case, the Defendant first argues that Plaintiff fails to meet the elements of her prima facie case because she was not rejected for the lieutenant position.  Plaintiff disagrees.

Plaintiff was promoted because the ACSO had to promote her.  She scored in the top band and was the only female who was qualified for promotion.  She scored higher than Mike Jones, who was given the OPS lieutenant promotion. She scored only slightly lower than Hanson, who was given the lieutenant position over the Team she had supervised under Lt. Coe for several years.  Worse, Keith Faulk, who was not qualified to even take the lieutenant's test, [Plaintiff's Statement of Facts, ¶ 11], was put into the only remaining lieutenant's position in PIB in an acting capacity rather than giving this position to New.  Keith Faulk was a sergeant and did not meet the qualifications for the position- he was not a lieutenant.

Most significantly, when New was promoted, she was placed into "no" position.  By the time the males were all put into their positions, there was no position left for Plaintiff. Consequently, for the first time in ACSO history, a "floating" lieutenant position was created for New where she was only able to work in her lieutenant position when other lieutenants were out. She had to find her own work or she had to work on a shift with another lieutenant, which meant that she had little to no authority over anyone.  However, her salary was paid out of the PIB budget, where Keith Faulk held the acting lieutenant position.  She was not the PIB lieutenant as

4

Faulk received that job.  This was adverse employment action.  See Collins v. State of Illinois, 830 F. 2d 692, 703, fn 7 (7th Cir. 1987)(Title VII does not limit adverse job action to strictly monetary considerations).

"[T]he fact that [the employer] promoted ... an employee who was unqualified by [the employer's] own criteria over [an employee who was so qualified] supports an inference of discrimination."  Bass v. Bd. of County Comm'rs., 256 F.3d 1095, 1108 (11th Cir.2001).  This is precisely what happened here and at least a  fact question exists on the issue of whether New was more qualified than Faulk and the other males for each of the lieutenants positions. See Carter v. Three Springs Residential Treatment, 132 F. 3d 635, 644 (11th Cir. 1998)(explaining that while nothing is inherently wrong with subjective criteria, it "cannot be relied upon by an employer in seeking to defeat the plaintiff's prima facie case by showing that the plaintiff is less qualified than the applicant chosen for the promotion"); Naia v. Deal, 12 F. Supp. 2d 1369, 1376 (S.D. Ga. 1998)(issue of qualifications of respective applicants for jury to decide).

Defendant also argues that it has offered a legitimate reason for placing Faulk into the Acting Lieutenant position over New.  This argument fails as well.  Defendant argues that New's lack of prior experience in the PIB, in contrast to Faulk, undermines any contention that the Defendant's promotional decisions were pretextual because of gender.  But the Defendant's own witnesses have said that prior experience is not required for promotion to lieutenant or captain positions within the ACSO. [Plaintiff's Statement of Facts, ¶ 14].  Moreover, New has a master's

5

degree in English and was well qualified for the PIB lieutenant position. [Coe deposition [Exhibit 133], pgs. 18-19]. She had also had interactions with the media while making sexual offender arrests as a detective; years of experience teaching in the classroom and editing scholarly manuscripts; and extensive interviews on a radio program discussing crimes against children, specifically child pornography. [Plaintiff's Statement of Facts, ¶ 14]. Most importantly, Faulk was placed into a lieutenant position, and he was not and could not be a lieutenant.

Precedent in the Eleventh Circuit makes clear that where an employee seeks to prove pretext through qualifications alone, the difference in qualifications must be so glaring that no reasonable impartial person could have chosen the candidate selected for the promotion in question over the plaintiff. Alexander v. Fulton County, 207 F.3d 1303, 1340 (11th Cir.2000). However, where the qualifications disparity is not the *sole* basis for arguing pretext, the disparity need not be so dramatic to support an inference of pretext. See Bass, 256 F.3d at 1107 ("Hiring a less qualified person can support an inference of discriminatory motivation."). New can use the qualifications disparity as the sole basis for arguing pretext or she can rely on other evidence as well as she has shown below. "[W]here the qualifications disparity is not the sole basis for arguing pretext, the disparity need not be so dramatic to support an inference of pretext." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir.2005); see also Bass, 256 F.3d at 1107 ("Hiring a less qualified person can support an inference of discriminatory motivation.")

Using qualifications alone, Plaintiff need only show that Faulk was not a lieutenant and

6

did not qualify for the PIB position.  She took a test, passed and was eligible for promotion. Faulk did not take the test and was consequently not even eligible for the position.

This evidence coupled with other evidence of discrimination also compels the conclusion that New was the victim of gender discrimination.  There were three males who received lieutenant positions in November 2005.  They all received actual positions.  New, who scored higher than one of those males, Jones, did not receive a position.  Faulk, who did not even take the test, was given the only remaining position.  New had also worked in each of the divisions in which two of the males were promotion, i.e., road patrol (Hanson position) and OPS (Jones position).  These facts support a finding that Plaintiff has met the elements of her prima facie case.  See Naia, supra, ("By presenting evidence that Defendants allegedly treated male and female officers differently, Plaintiff has cast doubt on Defendants' proffered explanation for the denial of promotions.")

These facts thus show weaknesses, implausibilities, inconsistencies, incoherencies and contradictions in the Defendant's proffered legitimate reasons on the issue of Plaintiff's alleged lack of qualification for the position that a reasonable factfinder could find them unworthy of credence.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).  In Reeves, the Supreme Court explained that "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." Id.  A review of the record in this case shows that New's "prima facie case, combined with

7

sufficient evidence to find the employer's asserted justification false, may permit the trier of fact

to conclude that the employer unlawfully discriminated.".  Id.  A genuine issue of material fact

thus exists regarding whether the failure to legitimately promote New was based on her sex.  See

Wilson v. B/E Aerospace, Inc., 376 F. 3d 1079, 1091 (11th Cir.2004).

### III. PLAINTIFF WAS THE VICTIM OF RETALIATION AS TO HER PROMOTION

Plaintiff claims that the failure to place her into an actual lieutenant position is protected

under the opposition clause.  Using circumstantial evidence to defeat the Defendant's motion for

summary judgment, to establish a *prima facie* case of retaliation under Title VII, a plaintiff must

show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse

employment action; and (3) there is a causal connection between the two events. Brochu v. City

of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir.2002).  To establish a causal connection, a

plaintiff must show that the protected activity and the adverse action "are not completely

unrelated". Hidgon v. Jackson, 393 F.3d 1211, 1220 (11th Cir.2004). In the absence of other

evidence of causation, temporal proximity between the protected activity and the adverse action

must be close in order to show a causal connection. Id.  Plaintiff has evidence of both temporal

proximity and other evidence of causation.

Defendant argues that Plaintiff cannot establish that the failure to place her into a position

and/or placing Faulk instead of Plaintiff into the PIB lieutenant position is retaliatory because she

cannot meet the first element of the prima facie case.  Plaintiff disagrees.  In August, 2005,

8

Plaintiff prepared and submitted an intraoffice communication (IOC) to Donnie Love advising that she was offended by gender related comments by Whitney Burnette.  Those comments were that "Kathleen New had no business being a lieutenant" and "women have no business in law enforcement, much less in a command position."

An employee who seeks protection under the opposition clause must have a "good faith, reasonable belief" that her employer has engaged in unlawful discrimination.  Clover v. Total System Services, Inc., 176 F. 3d 1346, 1351 (11th Cir. 1999).  In this case, Burnette said that women should not be in law enforcement.  This is undeniably a "gender based" comment. Importantly, sexual harassment is defined under the ACSO police [Exhibit 9] to include sexual comments and insults.

New does not have to prove that there was actual sexual harassment or discrimination by Burnette.  She only has to show that she had a good faith, reasonable belief, that her employer, through Burnette, engaged in unlawful discrimination.  She met this requirement when she reported to Love in September, 2005 and again through her reports to OPS in December, 2005. See -O'Connor v. Houston, 2008 WL 794810, *6 (M.D. Ga. 2008)(gender based comments sufficient to show objective reasonableness of the plaintiff reports).

Defendant also argues that New suffered no adverse action after her reports to Love and OPS.  In 2006,  the U.S. Supreme Court clarified that the anti-retaliation provision of Title VII requires a plaintiff to show "...that a reasonable employee would have found the challenged

action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " Burlington & Northern Santa Fe Railway v. White, 126 S. Ct. 2405, 2415 (2006). New certainly would have viewed the failure to place her into an actual lieutenant position as adverse when she had to find work on her own and work on other lieutenants shifts just to keep her job. Her non-selection for an actual position is materially adverse such that a reasonable worker might have been dissuaded from engaging in protected activity. See Doe v. Winter, 2007 WL 1074206, *8 (M.D. Pa. 2007)(non-selection for promotion could have dissuaded reasonable worker from engaging in protected activity).

With respect to the Defendant's claim that Plaintiff's demotion fails because Oelrich was not aware of her protected activity, the circumstances of Plaintiff's plight suggest otherwise. In this case, New has shown that her protected activity was followed closely by adverse actions and there is evidence of retaliatory animus directed at Plaintiff shortly after she first engaged in protected activity. Immediately after her initial reporting, the ACSO refused to place her into a real lieutenant position.

There is no disputing that Donnie Love, the Captain over the ACSO uniform patrol, had knowledge of Plaintiff's complaints about Burnette. Although New "must generally establish that the employer was actually aware of the protected statement at the time it took adverse employment action, the defendant's awareness may be established through circumstantial

10

evidence." <u>Sullivan v. National Railroad Passenger Corp.</u>, 1996 WL 815394, *6 (S.D. Fla.)(not reported); <u>see also</u> <u>Tyler v. Bethlehem Steel Corp.</u>, 958 F. 2d 1176, 1183 (2d Cir. 1992). Evidence that the employer was aware of the Plaintiff's protected statement, combined with the timing of the alleged retaliatory actions, are sufficient to establish a prima facie case of discrimination. <u>See</u> <u>Yartzoff v. Thomas</u>, 809 F. 2d 1371, 1376 (9th Cir. 1987).

In the instant case, the employer, through Donnie Love, was aware that New reported discriminatory comments by Burnette prior to her promotion.  She was promoted into a non-existent position within two months after her original reporting to Love.  This evidence is sufficient to create a causal nexus between the reporting and the adverse actions. <u>See</u> <u>Farley v. Nationwide Mutual Ins. Co.</u>, 197 F. 3d 1322, 1337 (11th Cir. 1999)(a close temporal proximity of seven weeks between the employee's termination and his supervisor's knowledge of the complaint was "sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case."); <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F. 3d 1453 (11th Cir. 1998); <u>Kachmar v. SunGard Data Sys., Inc.</u>, 109 F.3d 173, 177 (3d Cir.1997).  Although the timing of an employer's adverse employment action may not, by itself, provide prima facie evidence that disciplinary action is attributable to retaliatory motives, the temporal proximity between an employer's action and an employee's protected activity may permit an inference of causation where the relatively short interval between the two is "unusually suggestive" of retaliation. <u>See</u> <u>Krouse v. American Sterilizer Co.</u>, 126 F.3d 494, 500 (3d Cir.1997); <u>Robinson v. City of</u>

Pittsburgh, 120 F.3d 1286, 1302 (3d Cir.1997)(observing that temporal proximity alone may suffice to establish a causal connection if the timing of an employer's adverse employment action is "unusually suggestive" of retaliation).  "[T]emporal proximity [or antagonism] merely provide an evidentiary basis from which an inference [of causation] can be drawn." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000) (quoting Kachmar, 109 F.3d at 178).

## IV.  PLAINTIFF'S DEMOTION

Defendant claims that Plaintiff cannot prove that she was demoted due to either gender discrimination or retaliation.  First, on her gender claim, to show gender bias in the discipline imposed on New, in addition to being a member of a protected class, she must show either (a) that she did not violate the work rule, or (b) that she engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against her were more severe than those enforced against the other persons who engaged in similar misconduct. Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir.1989) (holding that in order to show discriminatory discipline, plaintiff must show either that he did not violate the work rule or "that he engaged in misconduct *similar* to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against other persons who engaged in *similar* misconduct" (emphasis added)).[2]

---

[2]     Another way of establishing a prima facie case of employment discrimination based on a demotion following an employee's misconduct requires the plaintiff to show that (1) she belongs to a protected class; (2) she was qualified for the job; and (3) the misconduct for which the employer demoted her was the same or similar misconduct to that which a similarly situated

Plaintiff has either defeated each claim of misconduct by the Defendant in this case or shown that similarly situated males did something similar if not identical to her actions but received no discipline. The two charges against New that resulted in her demotion were that she falsified numbers on the weekly supervisor summaries and that she frequented eBay while on duty. On the first charge, she estimated the numbers just like all of the other sergeants and lieutenants. If the ACSO was to legitimately punish New, it would have to punish every other supervisor because they estimated their numbers also. [Plaintiff's Statement of Facts, ¶ 36-40].

As for the claim that New was using eBay excessively, the charges against her could not be more contrived. Donnie Love asked the computer technician for the ACSO, Mickey Smith, to run New's computer password, but no one else's, and Love learned through this exercise that her password was being used when she was not at work. When she did visit eBay, she did nothing different than other male deputies who played Fantasy Football or used the Internet for other personal reasons. Donnie Love never pulled the computer records for the males prior to recommending disciplinary action against New.

The Defendant has attempted to justify its actions against New by claiming that her probationary status distinguishes her from the other male deputies against whom she compares her treatment. New's probationary status makes no difference here. She was subject to the same system of points and disciplinary rules that every other permanent employee was subjected to

---

employee engaged in, but was not similarly disciplined for." <u>Moore v. Alabama Dep't of Corr.</u>, 137 Fed.Appx. 235, 238 (11th Cir.2005)

within the ACSO. [See Exhibits 43and 43A].  She also was recognized as a permanent status employee under the ACSO Career Service Board Rules. [See Exhibit 19].  Defendant's argument on this issue has no merit.  See also Brown v. DB Sales, Inc., 2005 WL 3591533 (E.D. Pa.)(court rejected the defendant's argument that the plaintiff was unable to show a similarly situated nonmember of the protected class because the plaintiff was on probation and the comparators were not).

The Defendant next claims that it has offered a legitimate reason for New's demotion. Estimating the numbers on the summaries and using the internet is not a legitimate reason if every other supervisor is doing the same thing.  Again, New has show that the Defendant's proffered reason is implausible and unworthy of belief.  Donnie Love was the instigator in New's demotion and his influence has infiltrated and influenced New's employment with the Defendant from the day she reported Burnette for his gender based comments.  He initiated the first investigation that resulted in her demotion.  He solicited the negative comments from her subordinates and peers.  He ignored evidence showing that she did not violate any rule of the Agency.  He then instructed supervisors at the Courthouse to document virtually everything she did and he made the decision to fire her, in consultation with DeCoursey and Stan Perry, other supervisors in New's chain of command.  Even though the Sheriffs may have been involved in making the ultimate decision to demote New, they did not did not act in a vacuum.  Love influenced every adverse action against New in this case.

14

"Where the titular decisionmaker is no more than a 'cat's paw', courts have looked beyond the formal structure of the decisionmaking process and held that defendant companies are liable for the invidious bias of the de facto decisionmaker." Bernstein v. Sephora, 182 F. Supp. 2d 1214, 1218 (S.D. Fla. 2002)(citing Llampallas v. Mini-Circuits, Lab, Inc., 163 F. 3d 1236, 1249 (11th Cir. 1998)("In a cat's paw situation, the harasser clearly causes the tangible employment action, regardless of which individual actually signs the employee's walking papers."))[3]

---

[3]     In Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 762, 118 S.Ct. 2257, 2269, 141 L.Ed.2d 633 (1998), the court held that

> "Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act. The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors. E.g., Shager v. Upjohn Co., 913 F.2d 398, 405 (C.A.7 1990)(noting that the supervisor did not fire plaintiff; rather, the Career Path Committee did, but the employer was still liable because the committee functioned as the supervisor's "cat's-paw"). The supervisor often must obtain the imprimatur of the enterprise and use its internal processes. See Kotcher v. Rosa & Sullivan Appliance Center, Inc., 957 F.2d 59, 62 (2nd Cir. 1992)("From the perspective of the employee, the supervisor and the employer merge into a single entity")."

See also Williams v. Mead Coated Bd., Inc., 836 F.Supp. 1552, 1569-70 (M.D.Ala.1993), aff'd, 41 F.3d 668 (11th Cir.1994)(actions or remarks of the employer reflecting a discriminatory attitude).

15

"Where there are several participants in the decision-making process, disparate treatment analysis requires that none of the participants be influenced by an improper bias." Jones v. Gerwens, 874 F.2d 1534, 1541 n. 13 (11th Cir.1989). Thus, even if Darnell or Oelrich were decisionmakers and were not motivated by a retaliatory animus (which Plaintiff contests) but Love was so motivated, the Sheriffs' neutrality cannot cure Love's bias, and New has shown a retaliatory motive. Id.; see also Bernstein, 182 F. Supp. 2d at 1218-19(court found evidence from which a jury could find that the defendant directly discriminated against the plaintiff by denying a promotion due to her ethnicity based upon statements by an executive who was the ultimate promotion decisionmaker even though another executive actually made the decision); McDonald v. Rumsfeld, 166 F. Supp. 2d 459, 464 (E.D. Va. 2001)("Under circumstances indicating that the decisionmaker's determination may have been tainted by another supervisor['s] or employee's discriminatory animus toward the plaintiff, it is appropriate to infer the causal connection if the evidence demonstrates that the supervisor or employee possessed leverage, or exerted influence, over the decisionmaker."); Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir.2000)("If employee can demonstrate that others had influence or leverage over the official decisionmaker ⋯ it is proper to impute their discriminatory attitudes to the formal decisionmaker."); Roebuck v. Drexel University, 852 F.2d 715, 727 (3d Cir.1988)("it is plainly permissible for a jury to conclude that an evaluation at any level, if based on discrimination, influenced the decisionmaking process and thus allowed discrimination to infect the ultimate

16

decision"); Griffin v. Washington Convention Ctr., 142 F.3d 1308, 1312 (D.C.Cir.1998)

("[E]vidence of a subordinate's bias is relevant where the ultimate decisionmaker is not insulated

from the subordinate's influence."); Kientzy v. McDonnell Douglas Corp., 990 F.2d 1051, 1060

(8th Cir.1993)("A reasonable jury could have found that [the employee] used [the

decisionmakers] as the conduit of his prejudice . . ..")

 Plaintiff has shown that her demotion was related to her gender or to a retaliatory motive

or both.  She has identified males who engaged in the same behaviors she engaged in but were

not demoted. [See Plaintiff's Statement of Facts, ¶s 25-40; see also Exhibit A to Plaintiff's

Statement of Facts].

 With respect to the timing of her demotion after she reported Burnette, on December 16,

2005, New participated in an OPS investigation regarding Danny Burnette.  During that

investigation, New reported that she was offended by his gender based statements. [See

Plaintiff's Statement of Facts, ¶ 18].  Within several days of New's statements to OPS, Love

began soliciting negative comments about New and she was slated for termination one month

later. [Plaintiff's Statement of Facts, ¶s 23, 24].  This temporal proximity again proves Plaintiff's

retaliation claim with respect to her demotion. See Goldsmith v. City of Atmore, 996 F. 2d 1155,

1163-64 (11th Cir. 1993)(abrupt transfer three weeks after plaintiff notified decisionmaker of

reports of discrimination was sufficient to satisfy the initial burden of proving a "causal link");

Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir.1987)(evidence that employer knew of

17

employee's protected activities, combined with a proximity in time between protected action and

the allegedly retaliatory action, is sufficient to establish prima facie case of retaliation);

Donnellon v. Fruehauf Corp., 794 F.2d 598, 600-01 (11th Cir.1986)(fact that plaintiff was

discharged only one month after filing complaint with the EEOC "belies any assertion by the

defendant that the plaintiff failed to prove causation"); Higdon v. Jackson, 393 F. 3d 1211, 1220

(11th Cir. 2004)(a period of as much as one month between the protected expression and the

adverse action was not too protracted to establish a *prima facie* case of retaliation); Christopher

v. Gannett Satellite Information Network, 2007 WL 1626099, * 3 (M.D. Fla. 2007)("the adverse

employment actions were taken only 2 to 4 months following the protected activity, which, on

these facts, is sufficient to establish a *prima facie* case of retaliation."); Berman v. Orkin

Exterminating Company, Inc., 160 F. 3d 697 (11th Cir. 1999)(transfer which occurred within 5

weeks after plaintiff filed his EEOC charge and both transfers were within a couple of months of

the complaint, *prima facie* case of retaliation established).

## V.  **PLAINTIFF'S TERMINATION**

Plaintiff maintains that she was fired both in retaliation for her protected activity, i.e., two

(or three) charges of discrimination by the time she was fired, and because of her gender.

On Plaintiff's claim that her termination was gender based, she has identified multiple male

employees of the Defendant who engaged in similar conduct.[4] In examining claims that employees were

---

[4]    The accusation that she exposed her firearm is disputed.  However, even if she did expose it as
alleged by the Defendant, Plaintiff has provided direct male compators on this claim. [Plaintiff's

disciplined in a disparate manner, the Eleventh Circuit has explained that "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." See Maynard v. Bd. of Regents of Universities of Fla. Dept. of Educ., 342 F.3d 1281, 1289 (11th Cir.2003).

    In the present case, the Defendant's disciplinary matrix provides a convenient basis for determining who is and is not a comparator.  There are different levels of discipline and although there is some evidence that the point system is not followed within ACSO, the system provides a framework within which to evaluate the similarity of claims.

    Presuming that New was charged with a Level Five offense for the incident at the Courthouse with Chestnut, there are a number of male comparators against whom her discipline can be compared. Her closest comparators are Joel Coppock, Mitchell Hamilton and Keith Oberlin.  Each of these males engaged in far more serious conduct than Plaintiff and were not terminated. [See Exhibit A filed with Plaintiff's Statement of Facts].  Sadie Darnell has been involved in the disciplinary actions for each of these males.  They have not been fired for multiple violations of law and ACSO policy.

    With respect to New's retaliation claim, this is both an opposition and participation clause case in which New relies on circumstantial evidence to defeat ACSO's motion for summary judgment.  Both Darnell and Love knew that Kathleen New had filed charges of discrimination prior to her termination. [Plaintiff's Statement of Facts, ¶s 55, 81].  Although there was support for discipline against New for her conversations with Attorney Chestnut, her

_____

Statement of Facts, ¶ 76].

19

actions were less egregious than other deputies who have acted in ways to cause the ACSO to be

discredited.  Other deputies have been identified as well on Exhibit A to Plaintiff's Statement of

Facts and in paragraph 82 of Plaintiff's Statement that have acted similarly but were not fired.

Again, Donnie Love was the instigator in the disciplinary action that began to plague

Plaintiff after she reported Burnette and then filed her own charges of discrimination.  The

retaliatory harassment started shortly after she first reported and did not end until she was fired.

In Wideman, the court reversed a JNOV on facts that showed an adverse employment action

which consisted of evidence that after the employee filed a discrimination charge, the employer

began improperly listing attendance problems, refused to correct such errors, gave employee

written reprimands and a one-day suspension, one manager began soliciting coworkers for

negative statements about the employee, another manager threatened to shoot the employee if the

employee sought to correct a work scheduling error, and the like.  The facts of the case *sub judice*

are more egregious than those in Wideman, where retaliatory harassment was proven.  See also

Knox v. State of Ind., 93 F. 3d 1327, 1334 (7th Cir., 1996)("[n]o one would question the

retaliatory effect of many actions that put the complainant in a more unfriendly working

environment . . ..").

Defendant argues that there is no temporal proximity in this case for New to prove the

causal connection required on her termination retaliation claim.[5]  Plaintiff again disagrees.  See

---

[5]      Termination is an ultimate employment action that is undeniably adverse.  Freytes-Torres
v. City of Sanford, 2008 WL 763216, *6 (11th Cir. 2008).

e.g. Robinson v. Southeastern Pennsylvania Transportation Authority, 982 F.3d 892, 894-95 (3rd Cir. 1993)[6]; Von Gunten v. Maryland, 243 F. 3d 858, 864-65 (4th Cir. 2001);  Harrison v. Metropolitan Government of Nashville, 80 F.3d 1107, 1119 (6th Cir. 1996)[7]; Knox v. Indiana, 93 F. 3d 1327, 1334-35 (7th Cir. 1996); Ray v. Henderson, 217 F. 3d 1234, 1244-45 (9th Cir. 2000); Gunnell v. Utah Valley State Coll., 152 F. 3d 1253, 1264 (10th Cir. 1998);  Shannon v. Bellsouth Telecommunications, Inc.292 F.3d 712 (11th Cir. 2002)[8];Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1118 (11th Cir.2001)[9].

---

[6]    In Robinson, the court found that the employer's "constant barrage of written and verbal warnings, inaccurate point totalings, and disciplinary action, all of which occurred soon after plaintiff's initial complaints" provided an adequate basis for a Title VII retaliation claim where the employee was terminated almost two years after the employee made protected complaints. The court stated, that the "mere passage of time is not legally conclusive proof against retaliation."  Id. at 894-95.

[7]    In Harrison, the court  found that an employee who was terminated one year and three months after engaging in protected activity had nonetheless made a prima facie showing sufficient to satisfy the causal connection element of his Title VII claim.  The Harrison court also found that record reflected an atmosphere where the employee plaintiff's activities were scrutinized more closely than comparably situated employees and that the employer "took every opportunity to make [the plaintiff's] life as an employee unpleasant." Id. at 1119.

[8]    In Shannon, the court found that the cumulative effect of  minor indignities suffered by the plaintiff after he filed a discrimination complaint was sufficient to constitute "adverse employment action" as required to support his Title VII retaliation claim. Shannon, 292 F. 3d at 716.

[9]    In Bass, the court decided there was adverse employment action when, comparing the plaintiff to other employees of the same rank, the employer forced the plaintiff to perform more menial tasks under less senior personnel; denied the plaintiff opportunities to earn several types of extra pay available to his co-workers; and forced plaintiff to take tests in order to maintain his paramedic pay, while not requiring his co-workers to take the tests. Bass, 256 F.3d at 1118.

21

New has offered evidence that shortly after she began reporting about Burnette, she was denied privileges given to other lieutenants. She was also falsely accused of wrongdoing that resulted in her demotion from lieutenant to a bailiff. She was thereafter moved from the Civil to the Criminal Courthouse because her friend, Danny Buckley, was going to be working there. After she was relocated to the Criminal Courthouse, the harassment was severe and she began being written up for incidents that other deputies did daily with immunity. She was then fired on allegations far less serious than those of other deputies. The write ups/corrective counselings were unfair in light of New's performance and unjustifiably cruel and critical of her performance. These actions show a concerted effort to fire New and is compelling evidence of a brazen level of retaliatory animus. See Henley v. England, 2007 WL 2565976 (N.D. Fla. 2007)(concerted effort to generate write ups on the plaintiff would "clearly be indicative of pretext"); Ford v. General Motors Corp., 305 F.3d 545, 552 (6th Cir.2002)(actionable retaliation found when plaintiff was placed back under the harassing supervisor, retaliatory actions resumed by the supervisor imposing an increased workload on plaintiff, subjecting his performance to heightened scrutiny, and threatening to terminate him); Martin v. Mecklenburg County, 151 Fed.Appx. 275 (4th Cir. 2005)(under circumstances in which the plaintiff alleged that the employer took action against him at the "first opportunity", court held that the question of whether an impermissible retaliatory animus at least partially motivated the employee's termination was for jury in the Title VII proceeding alleging that the employer discharged him in retaliation for protected activity);

Hargrave v. County of Atlantic, 262 F.Supp.2d 393 (D.N.J.,2003)(the court held that the timing

of the plaintiff's suspension was not particularly indicative of retaliation but was nevertheless

satisfied that the testimony concerning the circumstances surrounding the County's decision to

discipline the plaintiff, together with evidence of the defendant's antagonistic behavior and

expressions of "retaliatory animus," was sufficient to raise a genuine; Shirley v. Chrysler First,

Inc. 970 F.2d 39, 43 (5th Cir. 1992)(the court rejected an employer's argument that the passage of

fourteen months was legally conclusive proof against retaliation, and found that the lapse of time

was just one of the elements in the entire calculation concerning the causal connection); Cristia v.

Systems Engineering and Security, 2004 WL 1801326 (E.D. La. 2004)(even with a five month

lapse between the plaintiff's charge and her termination, summary judgment was denied upon the

presentation of evidence showing that actions began to be taken against the plaintiff after her

charge was filed culminating in her termination.); Delisle v. Brimfield Township Police Dept., 94

Fed. Appx. 247 (6th Cir. 2004)(court found that where the relationship between the plaintiff and

his employer "swiftly deteriorated" after the plaintiff's protected activity, summary judgment was

improper).

     With respect to the Defendant's claim that DeCoursey and Briggette did not have

knowledge of New's charges of discrimination, the directive to take actions against New came

from Donnie Love. [Plaintiff's Statement of Facts, fn 39].  This was confirmed by Briggette

when he told New "it was definitely coming from above." [Plaintiff's Statement of Facts, ¶ 62].

Neither DeCoursey nor Briggette needed personal knowledge of her charges as they were being directed to take action against New by a person who admittedly had knowledge of her charges.

For the purposes of summary judgment, the Plaintiff has made the requisite showing to maintain her gender and retaliation claims. See Henley, supra.

## VI.  CONCLUSION

Defendant's motion for summary judgment should be denied in its entirety.  There are disputed issues of material fact that should be resolved only by a jury.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
310 East Bradford Road
Tallahassee, Florida 32303
(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing has been furnished to the attorney identified below by CM/ECF this 21st day of August, 2008:

R.W. Evans
Allen, Norton & Blue
906 North Monroe Street
Tallahassee, FL 32303-6143

/s/ Marie A. Mattox
Marie A. Mattox

24