IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KATHLEEN NEW,

   Plaintiff,          CASE NO. 1:07cv162-SPM/AK

vs.

SADIE DARNELL, in her
official capacity as Sheriff
of Alachua County, Florida,

   Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's Motion for Summary Judgment (doc. 24), legal memorandum in support (doc. 44), and statement of facts (doc. 45).  Plaintiff likewise has submitted a responsive memo (doc. 57), and statement of facts (doc. 56).   The Court will also discuss the Defendant's Amended Motion to Strike Plaintiff's Affidavit (doc. 62) and Plaintiff's response (doc. 72).  Because a decision about the admissibility of the Plaintiff's affidavit is central to a determination of the motion for summary judgment, the Court will address that motion as an initial matter. The parties have had the opportunity to fully brief both issues and to submit materials in accordance with Northern District of Florida Local Rules 56 and 7.1.

**I.**  **Motion to Strike**

Defendant argues that Plaintiff's 45-page affidavit is replete with inadmissible conclusions, opinions, and redundant and argumentative statements. Defendant claims that Plaintiff's extensive deposition testimony has already addressed the arguments made in Plaintiff's affidavit. Defendant also claims that there are numerous hearsay statements in Plaintiff's affidavit and that these statements are barred as hearsay by Federal Evidence Rule 801. Furthermore, Defendant argues that because Plaintiff has no personal knowledge of numerous statements in the affidavit, paragraphs containing those statements should be stricken from the record.

Because Plaintiff's affidavit was submitted in opposition to a motion for summary judgment, it must comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. Auto Drive-Away Co. v. Interstate Commerce Comm'n., 360 F.2d 446, 448-449 (5th Cir. 1966). "Rule 56(e) makes it plain that affidavits submitted in support of or opposition to a motion for summary judgment 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein.'" Butler v. Ala. DOT, 512 F. Supp. 2d 1209, 1218 (M.D. Ala. 2007).

Motions to strike pursuant to Civil Procedure Rule 12(f) "are only appropriately addressed towards matters contained in the pleadings; here, the affidavit was submitted as part of the motion for summary judgment, which is not a pleading." Polite v. Dougherty County Sch. Sys., 2008 U.S. App. LEXIS 17128

2

(11th Cir. Ga. Aug. 11, 2008) (citing Fed.R.Civ.P. 7(a), 12(f)).  However, when considering motions to strike affidavits submitted in conjunction with motions for summary judgment, this Circuit has advised us to disregard an affidavit in limited circumstances if the affidavit in question "flatly contradicts earlier deposition testimony in a manner that cannot be explained."  Akins v. Fulton County, 278 Fed. Appx. 964 (11th Cir. 2008).  Here, Plaintiff's testimony does not "flatly contradict" information given at her deposition.  Therefore, this Court declines to consider the motion to strike under the sham affidavit rule or Civil Procedure Rule 12(f).  Only the Civil Procedure summary rule will be applied.

In this case, there may indeed be certain words that appear to reflect legal conclusions.  However, this Court recognizes that these apparent conclusions are merely a reflection of Plaintiff's perception of the events that she had seen or heard.  Similarly, any facts that are repeated in the affidavit and the deposition do not result in confusion of the issues or prejudice to Defendant.  The fact that every single word of Plaintiff's affidavit may not be admissible in open Court is not fatal to the affidavit.  Nor does it justify this Court expending significant time parsing through and dissecting every line of Plaintiff's 45-page affidavit and then discussing its applicability in a written order. There is no evidence that Plaintiff has attempted to thwart either the Federal Rules of Civil Procedure or the Federal Rules of Evidence.  This Court is qualified to review Plaintiff's affidavit and then make legally proper determinations of the admissibility of the facts contained therein and to only consider statements that are in compliance with

Rule 56 of the Federal Rules of Civil Procedure. Therefore, Defendant's motion to strike will be denied.

## II.  BACKGROUND

Plaintiff in this case is Kathleen New. She is suing her former employer Sheriff Sadie Darnell of the Alachua County Sheriff's Office (ACSO) for gender discrimination (Count One) and retaliation (Count Two). In March 1997, after obtaining a Bachelor's degree and a Master's degree in English, Plaintiff began working for ACSO. By 2000, Plaintiff was a sergeant. In 2003, Plaintiff was certified in law enforcement internal affairs, labor and employment law, and personal management. Plaintiff also worked in the Office of Professional Standards for approximately two and a half years.

From the start of Plaintiff's employment through January 3, 2006, Plaintiff had always received "commendable", "acceptable", "meets standards", "superior", or "exemplary performance" reviews. In June 2005, Plaintiff requested permission to take the lieutenant's exam. Permission was granted and in August 2005, Plaintiff took the exam and scored in the top tier of applicants. Sergeant Mike Hanson and Sergeant Mike Jones also took and passed the lieutenant's exam. Out of the three of them, Mike Hanson scored the highest (70.5%), Plaintiff scored in the middle (69.0%), and Mike Jones scored the lowest (62.2%).

Also in August 2005, Plaintiff wrote an InterOffice Communication to Captain Donnie Love complaining about gender-biased comments made by

Lieutenant Whitney Burnette.  The comments were not made to Plaintiff; they were reported to her by other officers.  When Plaintiff heard no response from Captain Love, she asked him about it.  Captain Love then told Plaintiff that he had not received her InterOffice Communication but that Plaintiff might "pay" for reporting these comments allegedly made by Burnette.

After the results of the lieutenant's exam were posted, Hanson was promoted to a lieutenant position and assumed command of the position in a division that Plaintiff had previously worked in as an acting lieutenant when the official lieutenant of that department was away.  There were two other lieutenant positions open, one was in the Office of Professional Standards and another in the Public Information Bureau. Sergeant Keith Faulk, who had not taken the lieutenant's examination, was placed in the lieutenant position in the Public Information Bureau.  This placement was as an unofficial acting lieutenant.  The remaining lieutenant position in the Office of Professional Standards, where Plaintiff had previously worked, was given to Sergeant Mike Jones.

On November 13, 2005, when Plaintiff was promoted to lieutenant, she was given a "floating lieutenant" position that had no assigned role.  Plaintiff was instructed to fill in for lieutenants as needed.   Plaintiff did not have the same authority that other lieutenants had.  Plaintiff was given no new training for this position.   Nor was she given any assignments in her new position.  Plaintiff was to report directly to Captain Love.  Plaintiff was the first person ever to be assigned to a "floating lieutenant" position.  However, while Plaintiff was acting as

5

the floating lieutenant, she never received any criticism of her work from other officers or lieutenants.

On December 2, 2005, Plaintiff was identified as a possible witness in an investigation of Lieutenant Whitney Brunette. On December 16, 2005, Plaintiff offered testimony against Brunette, offering the same information that Plaintiff had previously reported to Captain Love first in the InterOffice Communication and then in person. Love was aware of Plaintiff's testimony against Brunette.

On January 3, 2006, Plaintiff was told that she was under investigation and while the investigation was ongoing, she would be placed on administrative leave. Plaintiff was accused of violating the ACSO's policies on truthfulness and "performance of duty." Complaints against Plaintiff were related to Plaintiff's excessive personal internet use while on duty, accusations of Plaintiff having a "non-caring attitude," not assisting other supervisors, being late to briefings and falsifying shift statistical sheets.

Upon the conclusion of the investigation, on February 1, 2006, Plaintiff was advised that she was to be terminated. Plaintiff then met with then-Sheriff Oelrich in order for Plaintiff to have an opportunity to respond to the complaints against her. On February 20, 2006, Plaintiff learned that instead of being fired, she would be demoted from lieutenant to courthouse bailiff.

Plaintiff's first day as a bailiff in the civil courthouse was February 23, 2006. Sergeant Monk was Plaintiff's first supervisor. On June 30, 2006, Monk gave Plaintiff an employee evaluation rating Plaintiff as "exemplary." Captain

Love was reassigned to the Court Security Bureau. Soon after Plaintiff's evaluation, Love reassigned Plaintiff to the criminal courthouse. Sergeant DeCoursey was Plaintiff's new supervisor. On August 14, 2006, Plaintiff filed her first charge of discrimination. On August 18, 2006, Plaintiff received her first Employee Observation Report from DeCoursey. This report contained many complaints about Plaintiff's behavior. None of these concerns had previously been brought to Plaintiff's attention. The report contained allegations of behavior such as reading in the courtroom, standing in incorrect locations in the courtroom, excessive cell phone usage, and not setting up the courtroom properly.

On November 17, 2006, Plaintiff received another Employee Observation Report. This report alleged that Plaintiff sat down while a criminal defendant was in the courtroom. Plaintiff also received an Employee Evaluation from DeCoursey that stated that Plaintiff's conduct was graded as "meets standards." This evaluation contained a complaint about Plaintiff walking through a secure holding area wearing her firearm. On January 24, 2007, Plaintiff was called in for a Corrective Counseling Session to address the many complaints against her. Plaintiff was accused of lying, not reporting to her supervisor when her courtroom session was over, and other improper behavior. On January 30, 2007, Plaintiff filed a second discrimination charge.

On January 29, 2007, a Citizen Complaint form charged Plaintiff with Conduct Unbecoming an Officer. This complaint stemmed from an incident that

7

occurred on January 26, 2007, during a suppression hearing. The complaint, written by Assistant State's Attorney Chang, stated that Plaintiff acted inappropriately by speaking to defense counsel during the hearing and by exposing her firearm to his client, a non-custodial defendant. Chang later testified that he had approached DeCoursey to ask him to instruct Plaintiff not to do this again. DeCoursey then asked Chang to put this request in writing.

Love ordered an investigation into this incident. As a result of the investigation, Plaintiff was served with a notice of termination on March 8, 2007. On March 16, 2007, Plaintiff had a hearing with Sheriff Darnell, who had succeeded Sherif Oelrich, in order to respond to the charges against her. Plaintiff agreed that speaking to defense counsel may have given an appearance of impropriety but she disagreed that she exposed her firearm to the defendant in the courtroom. Plaintiff received her final notice of termination on March 30, 2007. The final decision to terminate Plaintiff was made based on a point disciplinary system that incorporated the investigation of Plaintiff prior to her assignment to the courthouse. Plaintiff now claims that Plaintiff was the victim of gender discrimination and retaliation with regard to the creation of the "floating lieutenant" position, her demotion to courtroom bailiff, and her eventual termination.

### III.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "material" if it might affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party "by clear and convincing evidence". Id. at 254.

The burden is on Defendant to show that there are no genuine issues of material fact to be determined at trial. Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000). One way to meet the burden is by showing that Plaintiff's case is deficient due to the lack of evidence to support an essential element of her case. Riley v. Newton, 94 F.3d 632, 638-39 (11th Cir. 1996). In determining whether this burden has been met, the court views the evidence and all factual inferences in the light most favorable to the nonmoving party, and resolves all reasonable doubts about the facts in favor of the nonmoving party. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).

If the moving party has satisfied its burden, the burden shifts to the nonmoving party who must show "that summary judgment would be inappropriate because there exists a material issue of fact." Mullins, 228 F.3d at 1313. The burden can be met by presenting enough evidence to show that a reasonable finder of fact could find for the nonmoving party. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The nonmoving party must present more than a scintilla of evidence in support of its position. Anderson,

477 U.S. at 254. The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251.

## IV. McDONNELL DOUGLAS FRAMEWORK

"A plaintiff may prove discrimination in two ways: through direct evidence, or through circumstantial evidence that creates an inference of discrimination." Horne v. Turner Constr. Co., 136 Fed. Appx. 289, 291 (11th Cir. 2005) (citing Bass v. Bd. of County Comm'ers, 256 F.3d 1095, 1105 (11th Cir. 2001)). "Absent direct evidence of an intent to discriminate, a plaintiff may prove his case through circumstantial evidence, using the McDonnell Douglas framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Moore v. Jefferson County Dep't of Human Res., 277 Fed. Appx. 857, 859 (11th Cir. 2008) (citing E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1273 (11th Cir. 2002)).

Under the McDonnell Douglas framework, plaintiff must first show an inference of discriminatory intent by carrying her initial burden to establish a prima facie case of discrimination. Catanzaro v. Lyons, 232 Fed. Appx. 878, 880 (11th Cir. 2007) (citing McDonnell Douglas, 411 U.S. at 802 and Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997)). A plaintiff can establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified for the position held; (3) she was discharged or otherwise subjected to adverse employment action; and (4) she was treated less favorably than a similarly situated employee outside her protected class. Curtis

v. Broward County, 2008 U.S. App. LEXIS 19741 (11th Cir. Sept. 16, 2008) (citing Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003)).

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Catanzaro, 232 Fed. Appx. at 880 (citing Holifield, 115 F.3d at 1562). "The most important factors in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishments imposed." Catanzaro, 232 Fed. Appx. 878, 880 (11th Cir. 2007) (citing Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001)). Other employees are similarly situated when "the quantity and quality of the comparator's conduct [are] nearly identical" to plaintiff's conduct. Wood v. K-Mart Corp., 273 Fed. Appx. 806, 807 (11th Cir. 2008) (quoting Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)).

If Plaintiff meets her burden of showing a prima facie case of gender discrimination, then a legal presumption of discrimination arises and the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the challenged actions. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). Upon the proffer by Defendant of a legitimate, non-discriminatory reason, the legal presumption of discrimination disappears and the burden shifts back to Plaintiff. Id. Plaintiff must then present evidence sufficient to show that there are genuine issues of material fact as to the truth or falsity of Defendant's proffered

legitimate, non-discriminatory reasons and whether Defendant unlawfully discriminated against her. Id. at 1025 n.11.

## V. APPLICATION

### A. Gender Discrimination

Title VII of the Civil Rights Act of 1964 "prohibits, *inter alia*, an employer from discriminating against a person based on gender." Moore, 277 Fed. Appx. at 859 (citing 42 U.S.C. § 2000e-2(a)). "Under Title VII, a plaintiff bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence." Id. (citing Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990)). Here, Plaintiff is a woman, therefore a member of a protected class. Because she passed the lieutenant's exam, she was qualified for the position of lieutenant. The creation of a "floating lieutenant" position without the assignments, responsibility, and training of a traditional lieutenant position constitutes an adverse employment action. Lastly, this treatment was less favorable than the treatment received by Sergeant Keith Faulk, who is a male, and had not taken the lieutenant's examination but was placed in the lieutenant position in the Public Information Bureau. Plaintiff has therefore satisfied all elements of the prima facie case of a gender discrimination claim.

Defendant argues that because Plaintiff was actually promoted to lieutenant, the creation of the "floating lieutenant" position was not an adverse employment action and Plaintiff has not met her burden of establishing a prima facie case of gender discrimination. However, even if Defendant is correct, when

the creation of the position is combined with the demotion to courtroom bailiff and the complaints and the eventual employment termination, Plaintiff has sufficiently established adverse employment action. Therefore, Plaintiff has met her burden of demonstrating a prima facie case by establishing an inference of discriminatory intent.

Defendant attempts to articulate a legitimate, non-discriminatory reason for the behavior about which Plaintiff complains.  Defendant alleges that Plaintiff's misconduct distinguishes her from any other similarly situated person. Additionally, Defendant states that Plaintiff's alleged disregard of her employment duties was a sufficient justification for Defendant's actions.  Excessive personal internet usage, routine tardiness, disruptions of courtroom proceedings, and violations of officer safety protocols are all serious violations that could justify demotion and eventual firing.

It is true that if the allegations against Plaintiff are true, that they would erase the presumption of discrimination and Plaintiff is required to demonstrate that Defendant's legitimate reasons are actually a pretext for discrimination. However, there is disagreement about whether Defendant's response to these complaints is different from its response to almost identical behavior of people who are not in Plaintiff's protected class.  By presenting evidence that Defendant allegedly treated male and  female officers differently for engaging in the same type of behavior, Plaintiff has cast doubt on Defendant's proffered explanation for its treatment of her.  In evaluating Plaintiff's claim of gender discrimination, there

is a genuine issue of material fact about the legitimacy of Defendant's reasons for their treatment of Plaintiff. Whether those reasons were pretextual should be decided by jury.

### B.   Retaliation

"Title VII's anti-retaliation provision forbids employer actions that discriminate against an employee (or job applicant) because he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 59 (2006) (quoting § 2000e-3(a) (quotation marks omitted)). When a plaintiff uses circumstantial evidence in order to prove retaliation under Title VII, the Court must again apply the McDonnell Douglas burden-shifting approach articulated above. Curtis v. Broward County, 2008 U.S. App. LEXIS 19741, at *3.

To make a prima facie case of retaliation Plaintiff must show that (1) she engaged in an activity protected by Title VII; (2) she suffered adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. Williams v. Motorola, 303 F.3d 1284, 1291 (11th Cir. 2002). In the context of a retaliation claim, as compared to a discrimination claim, a more liberal standard for adverse employment action applies. Crawford v. Carroll, No. 04-00089, 2008 WL 2246677 (11th Cir. June 3, 2008). However, an employee's decision to oppose an unlawful employment practice or engage in protected activity does not

"immunize the employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington, 548 U.S. at 68. In assessing the seriousness of the alleged retaliatory conduct, an objective standard applies. Id. at 68-69. "[P]laintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68. (citations and quotations omitted).

Here, Defendant argues that Plaintiff's retaliation claim fails because Plaintiff cannot establish a causal connection between her testimony against Burnette or her discrimination claims and the creation of a "floating lieutenant" position, her demotion or her eventual firing. "The causal connection prong requires a plaintiff to show that 'the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated.'" Curtis, 2008 U.S. App. LEXIS 19741, at *7 (quoting McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008)). "A causal connection can be established by the close temporal proximity between the protected activity and the adverse action." Curtis, 2008 U.S. App. LEXIS 19741 *7 (citing Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).

Plaintiff's complaints about Burnette happened during the same time period as the creation of the "floating lieutenant" position. Similarly, Plaintiff's official filings of discrimination complaints took place in exactly the same time

period as her demotion and eventual firing from her position as courtroom bailiff. There is close temporal proximity between Plaintiff's activity and her adverse employment action. Therefore, Plaintiff has adequately satisfied the requirement of a causal connection. Additionally, Plaintiff's testimony against Burnette and her filing of discrimination suits are activity that is protected under Title VII and as discussed above, Plaintiff's treatment, demotion and eventual firing all constitute adverse employment action. As discussed above, the legitimacy of the stated reasons for Defendant's treatment of Plaintiff and whether these reasons are actually just pretext for unlawful discrimination is a material question of fact to be determined by a jury.

Based on the foregoing, it is hereby ORDERED AND ADJUDGED as follows:

1. Defendant's Motion for Summary Judgment (doc. 43) is **denied**.
2. Defendant's Amended Motion to Strike Plaintiff's Affidavit (doc. 62) is **denied**. The court has, however, limited its consideration of Plaintiff's affidavit only to the extent that it is not conclusory or redundant, it is based on Plaintiff's personal knowledge and it is in accordance with the Federal Rules of Evidence and the Federal Rules of Civil Procedure.

DONE AND ORDERED this <u>first</u> day of October, 2008.

                                  *s/ Stephan P. Mickle*
                                  Stephan P. Mickle
                                  United States District Judge